IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ELINA ADOPTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV169 |
| | ) | |
| CAROLINA ADOPTION SERVICES, INC. | ) | |
| and ABC ADOPTION SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Beaty, Chief Judge.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's
Amended Complaint [Doc. # 24] pursuant to Federal Rule of Civil Procedure 12(b)(6).
Plaintiff Elina Adoption Services, Inc. ("Elina" or "Plaintiff") filed a civil action against
Defendants, Carolina Adoption Services, Inc. ("CAS") and ABC Adoption Services, Inc.
("ABC") (together "Defendants"), in the United States District Court for the Northern
District of Georgia on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. The
action was subsequently transferred to the Middle District of North Carolina on motion by
the Defendants. Defendants then filed a Motion to Dismiss Plaintiff's Complaint pursuant
to Rule 12(b)(6) [Doc. #15]. However, before the Court had an opportunity to rule upon
Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. #15], Plaintiff filed an Amended
Complaint [Doc. #21]. In the Amended Complaint, Plaintiff alleges claims of breach of
contract, defamation, conspiracy, tortuous interference with a business relationship, and
unfair and deceptive trade practices. In addition, Plaintiff asserts claims for attorney's fees

and punitive damages. Defendants have now filed a Motion to Dismiss Plaintiff's Amended Complaint [Doc. #24] seeking dismissal of each of Plaintiff's claims for failure to state a claim upon which relief may be granted. For the reasons stated herein, Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. # 15] and Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. #24] will be DENIED.

I. FACTUAL BACKGROUND

This action arises out of a business dispute between Plaintiff Elina and Defendants ABC and CAS. Elina is a Georgia corporation that specializes in facilitating adoptions from Russia to the United States. CAS, a North Carolina corporation, and ABC, a Virginia corporation, are child adoption agencies which approve adoptive placements of Russian children. Home study documentation is required to be submitted to Russian authorities for processing by an accredited agency before Russian children can be adopted. ABC is accredited by the Russian Government to approve the placement of orphans from Russia for adoption in the United States. CAS is authorized to process cases using ABC's accreditation.

Plaintiff alleges that in March of 2003, Elina, ABC and CAS entered into a written agreement (the "Agency Agreement") whereby ABC and CAS agreed to review and forward Elina's home study documents to the Russian Government for processing and accreditation in exchange for a fixed fee. It is alleged that CAS entered into the Agency Agreement in its capacity as sole member of ABC's Board of Directors. It is further alleged that ABC subsequently ratified the Agency Agreement and became a party to the same. Under the alleged terms of the Agency Agreement, Elina assisted families in the United States with

home study documentation. The documentation was then sent to ABC and CAS for processing and review. Defendants, however, dispute that any such Agency Agreement existed.

Plaintiff contends that Defendants breached the Agency Agreement when a representative of ABC and CAS, operating in Russia, demanded that Elina pay fees that were substantially higher than those previously paid. Further, Plaintiff contends that Defendants made defamatory statements about Plaintiff's business. In support thereof, Plaintiff alleges that an ABC and CAS agent told Plaintiff's clients that Elina could no longer get home studies approved in Russia because the Ministry of Education recommended that ABC and CAS no longer work with Elina. Plaintiff further alleges that after the alleged defamatory statements, Defendants completed the adoption process for Plaintiff's clients and thereafter refused to do any further business with Plaintiff. Plaintiff contends that as a result of Defendants' actions its business collapsed.

Plaintiff initiated this action by filing a Complaint in the United States District Court for the Northern District of Georgia. Defendants subsequently filed a Motion to Dismiss or Alternatively, Transfer the Case to the Middle District of North Carolina pursuant to Federal Rule of Civil Procedure 12(b)(1) and (3) arguing improper venue and lack of subject matter jurisdiction [Doc. #4]. In an Order issued by the Northern District of Georgia [Doc. #9], Defendants' motion was granted in part and denied in part, and the matter was transferred to the Middle District of North Carolina. Defendants then filed a Motion to Dismiss Plaintiff's Original Complaint pursuant to Rule 12(b)(6)[Doc. #15]. However,

before Defendants' Motion to Dismiss Plaintiff's Original Complaint was ruled upon, Plaintiff filed an Amended Complaint [Doc. #21] alleging breach of contract, defamation, conspiracy, tortuous interference with a business relationship, and unfair and deceptive trade practices against Defendants. Defendants have now filed a Motion to Dismiss Plaintiff's Amended Complaint [Doc. #24] seeking dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.  STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2008).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted "only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co, 883 F.2d 324, 325 (4th Cir. 1989).  In determining whether to grant a Motion to Dismiss, the court evaluates the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations.  Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).  Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a) (2008).  "This 'statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Anderson v. Sara Lee Corp., 508 F. 3d 181, 188 (4th Cir. 2007) (quoting Eirckson v. Pardus, – U.S. – , 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citing Bell Atlantic v. Twombly, – U.S. –, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  Additionally, the complaint must contain "enough facts to state a claim to relief that

4

is plausible on its face." <u>Twombly</u>, – U.S. at  –, 127 S. Ct. at 1974. However, the Court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000).[1]

## III. DISCUSSION

### A. Plaintiff's Breach of Contract Claim

Plaintiff alleges that Defendants ABC and CAS breached the Agency Agreement. Defendants contend that there was no binding agreement between the parties, or in the alternative, that there was no breach of its provisions. Under North Carolina law, in order to state a claim for breach of contract there must be (1) a valid contract; and (2) breach of the terms of that contract. <u>Poor v. Hill</u>, 138 N.C. App. 19, 27, 530 S.E.2d 838, 843 (2000) (citing <u>Jackson v. California Hardwood Co.</u>, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)). A valid contract exists when there is an agreement based on a meeting of the minds and

---

[1] Plaintiff argues that Defendants' 12(b)(6) motion is untimely, citing Fed. R. Civ. P. 12(g). Rule 12(g) provides that a party raising any 12(b) defenses by pre-answer motion waives any 12(b) defenses not included in therein. <u>See</u> Fed. R. Civ. P. 12(g) (2008). The Court finds that Defendants' motion is not untimely. Plaintiff filed an Amended Complaint. Defendants subsequently filed a Motion to Dismiss Plaintiff's Amended Complaint. For the reasons discussed *infra* Part III.A., any previous motions based on Plaintiff's Original Complaint are moot. Moreover, Rule 12(h) provides that a 12(b)(6) motion may nevertheless be raised in a responsive pleading. <u>See</u> Fed. R. Civ. P. 12(h)(2)(A) (2008). In their responsive pleading, Defendants asserted Rule 12(b)(6) as a defense to Plaintiff's allegations. Therefore, Defendants in fact raised a 12(b)(6) motion within their responsive pleading as expressly permitted by Rule 12(h). Accordingly, the Court will allow Defendants to proceed with the present 12(b)(6) motion and will consider the arguments on the merits in this Memorandum Opinion.

5

sufficient consideration.  <u>Creech ex rel. Creech v. Melnik</u>, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001).

Defendants contend that there was no valid contract because there was no signed writing between the parties.[2]  Defendants cite <u>Croom v. Goldsboro Lumber Co</u>. arguing that absent allegations and proof of mutual assent, a contract is not valid and enforceable.  182 N.C. 217, 108 S.E. 735 (1921).  However, a signed writing is not essential to the validity of a contract; "[a]ssent may be shown in other ways, such as acts, or conduct or silence." <u>Burden Pallet Co., Inc. v. Ryder Truck Rental</u>, 49 N.C. App. 286, 289, 271 S.E.2d 96, 97 (1980).  Although Plaintiff's Amended Complaint does not explicitly allege that there was a signed writing between the parties, the Court finds that because Plaintiff alleged that the parties undertook obligations and retained benefits pursuant to mutually agreed upon terms, Plaintiff has sufficiently alleged the existence of a valid and enforceable contract.  Specifically, Plaintiff alleges that pursuant to the Agency Agreement, "Elina assisted families in the United States with the home study documentation required to be submitted to Russian authorities prior to adopting Russian children and sent the documents to ABC/CAS for processing and review." (Amended Complaint ¶ 9)  Further, the Amended Complaint alleges that the Agency Agreement provided that ABC and CAS were then required to "review and approve home studies submitted by Elina, to monitor and require compliance to the policies of Russia and [CAS] regarding adoption and to recommend families for adoption

_____

[2]     The Court notes that despite their present argument that there was no written agreement between the parties, Defendants relied on a Forum Selection Clause in the Agency Agreement in moving to transfer venue from the Northern District of Georgia to this Court.

documents." (Amended Complaint ¶ 15) Finally, the Amended Complaint alleges that the Agency Agreement provided that Elina would pay fixed fees to CAS in exchange for CAS and ABC's services, and that "every effort w[ould] be made to maintain this agreement by both parties." (Amended Complaint ¶ 15) Considering these allegations, the Court finds that Plaintiff has adequately alleged that there was a valid contract between the parties.

In the alternative, Defendants argue that the Agency Agreement contemplated and authorized the Defendants' conduct of which Plaintiff now complains, and that, consequently, Plaintiff has failed to establish that there was any breach of the Agency Agreement. Specifically, Defendants argue that the actions Plaintiff has alleged in support of its breach of contract claim, that is, that the agreement was breached when Defendants demanded higher fees, refused to provide further adoption services for Plaintiff, and further, that the Defendants convinced families not to continue to use Elina's services, were expressly contemplated and authorized under the terms of the Agency Agreement. In support of this argument, Defendants point to Plaintiff's Original Complaint to which a copy of the Agency Agreement was attached. With regard to Defendants' present 12(b)(6) motion, the Amended Complaint is the pleading that controls at this stage in the litigation. See Young v. City of Mount Rainer, 238 F.3d 567, 572 (4th Cir. 2001) (stating that an amended complaint ordinarily supersedes the original complaint and that as such, the Court should not consider allegations in the original complaint to dismiss the amended complaint). No additional documents were attached to the Amended Complaint. Therefore, Defendants' arguments in support of their motion to dismiss in so far as they are based upon

7

allegations in Plaintiff's Original Complaint have been rendered moot by virtue of the filing of an Amended Complaint. See, Hariston v. N.C. Agri. & Tech. State Univ., No. 1:04CV1203, 2005 WL 2136923, at *1 (M.D.N.C. Aug. 5, 2005) (stating that where a motion to dismiss is pending on the original complaint, the motion is "directed at a pleading that is no longer operative, and the [m]otion therefore is moot.").[3]

Moreover, an inquiry into the Defendants' conduct in light of the terms of the Agency Agreement is more appropriately reserved for consideration after the conclusion of discovery and upon a motion for summary judgment. The question presently before the Court is whether Plaintiff has alleged facts in its Amended Complaint so as to give Defendants sufficient notice of its claims. With regard to that question, the Court will not at this stage consider the conduct of the parties, but rather, will focus its analysis on the allegations as stated in Plaintiff's Amended Complaint. In that regard, the Amended Complaint alleges that ABC and CAS breached their agreement with Elina when they demanded higher fees than the agreement contemplated and subsequently refused to continue to provide adoption services in Russia for Elina. The Court finds that these

---

[3]      The Court notes that Defendants in their Reply Brief in response to Plaintiff's argument that Defendants should be precluded from filing a second 12(b)(6) motion to dismiss, stated, "[the] law is clear that the filing of an Amended Complaint moots the original Complaint and any Motions pending with respect to the same." (Def. Reply Br. at 2) Defendants further recognized the rule articulated by this Court in Hariston, 2005 WL 2136923, at *1, that where a motion to dismiss is directed at a pleading that is no longer operative, the motion is rendered moot. Yet, Defendants, in the face of the rules they explicitly cited in their Reply Brief, base their present arguments on Plaintiff's Original Complaint and the attachments thereto. For the reasons discussed herein, Defendants' arguments at this stage in the litigation cannot stand. The Court notes, however, that Plaintiff's Original Complaint and attached affidavits could be used as admissions in support of a motion for summary judgment pursuant to Rule 56.

allegations are sufficient to give Defendants notice of Plaintiff's breach of contract claim. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim will be denied.

B.   Plaintiff's Defamation Claim

Plaintiff has also asserted a claim for defamation against Defendants ABC and CAS. In order to recover for a claim of defamation under North Carolina law, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002). A claim for defamation may be asserted by alleging either of two torts: libel or slander. Id. at 29, 588 S.E.2d at 898. Libel is any false written publication to a third party; whereas, slander is a false oral communication which is published to a third party. Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 459, 524 S.E.2d 821, 824 (2000).

In the present case, Plaintiff alleges that the defamation was an oral communication; therefore, the allegations in the complaint must be sufficient to satisfy the elements of either slander *per se* or slander *per quod*. "Slander per se is a false statement which is orally communicated to a third person and amounts to: (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." Id., at 459, 524 S.E.2d at 824. "To establish a claim for slander *per se,* a plaintiff must prove: (1) defendant spoke base or defamatory words which tended to prejudice him in

9

his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." Friel v. Angell Care, Inc., 113 N.C. App. 505, 509, 440 S.E.2d 111, 113-14 (1994). When the defamatory communication is slander *per se*, "a prima facie presumption of malice and a conclusive presumption of damages arises, obviating the need for the plaintiff to plead and prove special damages." Id. at 460, 524 S.E.2d at 825. "When the defamatory character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts, they are only actionable as . . . slander per quod." Eli Research, Inc., 312 F. Supp. 2d at 761 (citing Badame v. Lampke, 242 N.C. 755, 756-57, 89 S.E.2d 466, 467-68 (1955)). When stating a claim for slander *per quod*, however, a plaintiff must plead and prove special damages, in addition to the aforementioned elements of a claim for slander *per se*. Id. at 757, 89 S.E.2d at 825. Here, Plaintiff has alleged that the statements by Defendants impeached Plaintiff in its profession as an agency that specialized in facilitating adoptions from Russia. Therefore, the Court finds that Plaintiff has alleged that the statements were slanderous *per se*, thus, obviating the need for Plaintiff to plead and prove special damages.

With regard to Plaintiff's claim of slander *per se*, Defendants contend that the claim should be dismissed because it was not pled with sufficient particularity, arguing that North Carolina's heightened pleading standard for defamation actions applies. In this regard, Defendants claim that Plaintiff's Amended Complaint does not allege with sufficient particularity: (1) the identities of the individuals who allegedly made defamatory statement to

10

third parties; (2) the identities of the individuals to whom the alleged defamatory statements were made; (3) the place and time the statements were made; or (4) the specific content of the alleged defamatory statements.

Defendants contend that North Carolina's heightened pleading standard, which requires defamation claims to be pled with particularity, should apply. Defendants' contention, however, is without merit. Although state substantive law applies in determining whether a plaintiff has satisfied the elements of a claim, "cases in federal court are subject to federal procedural law." Martin v. Boyce, No. 1:99CV01072, 2000 WL 1264148, at *8 (M.D.N.C. July 20, 2000) (citing Hanna v. Plummer, 380 U.S. 460, 465, 85 S. Ct. 1136, 1140 (1965) (holding that federal courts sitting in diversity must apply state substantive law and federal procedural law)). The Federal Rules of Civil Procedure do not prescribe a special pleading standard for libel or slander. Nor has the Fourth Circuit Court of Appeals imposed a heightened pleading standard for actions for defamation. In Wuchenich v. Shenandoah Mem'l Hosp., No. 99-1273, 2000 WL 665633, at *14 (4th Cir. May 22, 2000), the Fourth Circuit expressly stated that "Rule 8 does not contain a special pleading requirement for defamation;" therefore, the legal sufficiency of a claim alleging defamation should be determined by "Rule 8(a)'s liberal pleading requirement of a short and plain statement showing that [Plaintiff] is entitled to relief." Wuchenich, 2000 WL 665633, at *14; see also, Martin, 2000 WL 1264148 at *9 (declining to measure defamation claims against a heightened standard and instead following the standards set forth in Fed. R. Civ. P. 8(a)). Consequently, in light of Rule 8(a) which is the proper standard of review for Plaintiff's

defamation claim, Defendants' contentions that Plaintiff's Amended Complaint fails to specify such details as the place and time the statements were made and the specific content of the alleged defamatory statements, are irrelevant. See Martin, 2000 WL 1264148 at *9 (holding that defendants' arguments that plaintiff failed to allege "the exact words alleged to be defamatory and . . .the time and place of each allegedly defamatory statement" were without merit).

Next, Defendants argue that Plaintiff has failed to establish the elements of a claim for slander *per se*. The Court finds, however, that Plaintiff has sufficiently pled each element of claim for slander *per se* under North Carolina substantive law. The first element requires Plaintiff to allege that "[d]efendant spoke base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt." Friel, 113 N.C. App. at 509, 440 S.E.2d at 113-14. Although Defendants argue that Plaintiff failed to set out the identity of the parties who allegedly made the defamatory statements, Plaintiff's Amended Complaint alleges that employees of ABC and CAS, specifically, Oleg Oleinikov and Tom Jackson, told several of Elina's clients, on several occasions that Elina was no longer qualified to set up adoptions in Russia. The Amended Complaint further alleges that these were defamatory statements which held Plaintiff in disgrace, ridicule, and contempt, and that Plaintiff suffered economic damages, including but not limited to total loss of its business. Therefore, the Court finds that Plaintiff's allegations in this regard are sufficient to satisfy the first element of a claim for slander *per se*.

The second element requires that Plaintiff allege that Defendants' statements were false. See Friel, 113 N.C. App. at 509, 440 S.E.2d. at 113-14. The Amended Complaint alleges that Oleg Oleinikov falsely stated that Elina could no longer get home studies approved in Russia because the Ministry of Education recommended that ABC and CAS no longer work with Elina. Because Plaintiff has alleged that the statement was false, the Court finds that Plaintiff has sufficiently pled the second element of its defamation claim.

The third element requires that Defendants' statements be published or communicated to and understood by a third person. Contrary to Defendants' contention that Plaintiff failed to allege the identities of the individuals to whom the alleged defamatory statements were made, the Amended Complaint states that the alleged defamatory statements were communicated to Denise Hardin, Susan Hopson, Dawn Levreau, Jennifer Hinton, and other Elina clients.[4] The Court finds that these allegations are sufficient to satisfy the third element of a cause of action for slander *per se*. Accordingly, in light of Federal Rule of Civil Procedure 8(a), which does not require a defamation claim to be pled with particularity, the Court concludes that Plaintiff's allegations are sufficient to establish a prima facie case of slander *per se*. Therefore, Defendants' Motion to Dismiss with respect to Plaintiff's defamation claim will also be denied.

---

[4] Defendants' arguments regarding whether the statements were communicated to a third person based upon the affidavits attached to Plaintiff's previous pleadings are misplaced at this stage in the litigation. Such arguments based upon the affidavits are better reserved for a later stage of the litigation pursuant to a Rule 56 motion for summary judgment.

C.  Plaintiff's Civil Conspiracy Claim

In Count III of the Amended Complaint, Plaintiff asserts a cause of action for common law civil conspiracy against Defendants.  Here, Defendants have moved to dismiss this claim arguing that there is no separate cause of action for conspiracy in North Carolina. While Defendants are correct that there is no cause of action for civil conspiracy *per se*, an "action may lie for wrongful acts committed pursuant to a conspiracy."  Henderson v. LeBauer, 101 N.C. App. 255, 260, 399 S.E.2d 142, 145 (1991).  In order to state a claim for civil conspiracy under North Carolina law, Plaintiff must allege that there was: "(1) an agreement between two or more persons to commit a wrongful act; (2) an act in furtherance of the agreement; and (3) damage to the plaintiff as a result."  Eli Research, Inc. v. United Comm. Group, LLC, 312 F. Supp.2d 748, 763 (M.D.N.C. Apr. 6, 2004) (citing  Pleasant Valley Promenade, L.P., v. Lechmere, Inc., 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995)).  "[L]liability attaches as a result of the wrongful act committed, not the agreement itself."  Eli Research, Inc., 312 F. Supp.2d at 763 (citing Dickens v. Puryear, 302 N.C. 437, 456, 276 S. E. 2d 325, 337 (1981)).  Thus, "the existence of an underlying tortious act is the key to establishing a civil conspiracy."  Id.  With regard to these elements, the Amended Complaint alleges that Defendants conspired with each other and "upon information and belief, with others," to defame Plaintiff, and that Defendants committed acts in furtherance of that conspiracy.  Finally, Plaintiff alleges that it suffered damages in excess of $75,000. The Court finds that Plaintiff's allegations of defamation as the wrongful act underlying the civil conspiracy claim, in addition to Plaintiff's allegations of an agreement between

Defendants ABC and CAS to defame the Plaintiff, are sufficient to put Defendants on notice of Plaintiff's claim for civil conspiracy. As such, Defendants' motion to dismiss this claim will also be denied.

   D.   Plaintiff's Tortious Interference with a Contractual Relationship Claim

   Count IV of Plaintiff's Amended Complaint asserts a cause of action for tortious interference with a business relationship. North Carolina, however, does not recognize a cause of action for tortious interference with a business relationship. To the extent that Plaintiff is attempting to allege a cause of action for tortious interference with a *contractual* relationship, Plaintiff must plead the following elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff. Childress v. Abeles, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954). See also, Eli Research, 312 F. Supp. 2d at 756.

   Defendants contend that Plaintiff has failed to establish each of the elements set forth above. With respect to the first element, Defendants argue that Plaintiff failed to set forth specific details regarding their contracts with families it assisted in adopting children from Russia. To that end, Defendants contend that Plaintiff's allegations are insufficient because they fail to allege the names of all the parties to the alleged contracts, the dates and locations where the contracts were executed, the form of the contracts – whether oral or written, and the terms of contracts. In support of their argument that the aforementioned details are

15

required to state a claim for tortious interference with a contract, Defendants cite <u>Moore v.</u> <u>Fidelity Fin. Servs., Inc.</u>, 869 F. Supp. 557 (N.D. Ill. 1999). The Court notes that Defendants' authority is not binding on this Court in this district; and further, that <u>Moore</u> is inapplicable to the allegations at bar. First, <u>Moore</u> addressed the sufficiency of the allegations of a breach of contract claim under Illinois law, rather than a claim for tortious interference with a contractual relationship as recognized by North Carolina law. Moreover, when assessing the breach of contract claim in that case, <u>Moore</u> addressed the defendant's motion for a more definite statement pursuant to Rule 12(e) (which that court denied, finding that the plaintiff had "recite[d] the relevant agreement, the basic contents of that agreement, and the pertinent parties." <u>Id.</u> at 560-61).

With regard to the elements of Plaintiff's tortious interference with a contract claim, the Court finds that Plaintiff has sufficiently alleged each element to establish a prima facia case for tortious interference with a contract. With regard to the first element, that there be a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person, Plaintiff alleges that in 2005 it executed and maintained contracts with the Hopson, Hardin, Levreau and Hinton families to facilitate the adoption of Russian children in exchange for a fee. Regarding the second element requiring that the defendants have some knowledge of the contract to which they are alleged to have interfered, Plaintiff alleges that Defendants were aware of Plaintiff's contracts with these families. Next, in satisfaction of the third element, that the defendants intentionally induced the third person not to perform the contract, Plaintiff alleges that Defendants intentionally

16

induced these families to terminate contractual relations with Plaintiff and instead enter into contracts with Defendants. The Court finds that these allegations are sufficient to satisfy the first, second and third elements of Plaintiff's claim for tortious interference with a contract.

Concerning the fourth element, which requires Plaintiff to allege that Defendants acted without justification in interfering with its contract, Defendants argue that they were in fact justified in interfering with Plaintiff's contractual relationships. The Court notes that "[u]nless it appears on the face of the complaint that a defendants' conduct was justified, justification is an affirmative defense." Embree Const. Group, 330 N.C. at 499, 411 S.E.2d at 925. Therefore, unless Defendants' actions appear justified on the face of Plaintiff's Complaint, Defendants' contentions in this regard are a matter to be decided after resolution of the facts at issue in this dispute. This Court, looking only to Plaintiff's Complaint as it must when considering a Rule 12(b)(6) motion to dismiss, must determine whether it appears from the face of Plaintiff's Complaint that Defendants' actions were justified. To that end, Defendants again direct the Court's attention to the attachments filed along with Plaintiff's Original Complaint in arguing that their actions were justified. As previously discussed, Defendants' arguments with regard to Plaintiff's Original Complaint are moot. The Court finds that Defendants' actions do not appear to be justified on the face of Plaintiff's Amended Complaint. On the contrary, Plaintiff's Amended Complaint states that Defendants acted "without privilege and with intent to injure Elina." Therefore, because Defendants' conduct does not appear to be justified on the face of the Amended Complaint,

17

and because Plaintiff has expressly alleged that Defendants' interference was not justified, the Court finds that Plaintiff has sufficiently alleged the fourth element of a claim for tortious interference with a contractual relationship.

With respect to the fifth and final element of Plaintiff's claim for tortious interference with a contractual relationship, that is, that Defendants interference resulted in actual damage to Plaintiff, Defendants argue that Plaintiff failed to specify the nature of its sustained pecuniary damages. However, Defendants have not cited any authority which would support their contention that Plaintiff is required to specify how it arrived at its measure of damages in the Amended Complaint. While the North Carolina courts have not defined the element of "actual damages" for a tortious interference with a contract claim, the courts have observed that cases asserting this cause of action involved a claim for "actual monetary damages." Burgess v. Busby, 142 N.C. App. 393, 403-04, 544 S.E.2d 4, 10 (2001) (citing Childres v. Abeles, 240 N.C. 667, 84 S.E.2d 176 (1954) (finding that plaintiff who was entitled to commissions suffered actual damage as a result of defendants' tortious interference with plaintiff's contract)); Lexington Homes Inc. v. W.E. Tyson Builders, Inc., 75 N.C. App. 404, 412, 331 S.E.2d 318, 323 (1985) (holding that defendant stopping payment on $42,000 worth of checks resulting in checkholders filing liens, tended to show that defendant was actually damaged in some pecuniary amount by the tort complained of); Barker v. Kimberly-Clark Corp., 136 N.C. App. 455, 462, 524 S.E.2d 821, 826 (2000) (overturning award of summary judgment where actions of defendants caused plaintiff to lose employment, resulting in actual damage). In the present case, Plaintiff has alleged that it

18

suffered "significant pecuniary damages, including a total loss of its business," as a result of the Defendants' interference with Plaintiff's contracts with families seeking to adopt children from Russia. The Court finds that viewed in the light most favorable to Plaintiff, an allegation asserting a "total loss of its business" is sufficient to state a claim for actual monetary damage suffered by Plaintiff. The Court notes that, ultimately, Plaintiff will have to present evidence to establish actual damages, and the Court offers no opinion as to whether Plaintiff will be able to meet that test. However, the Court concludes that given Plaintiff's allegations of a "total loss of its business," Plaintiff should not be denied the opportunity to produce evidence of damages due to the Defendants' alleged interference with its contractual relationships. Therefore, the Court concludes that Plaintiff's allegations are sufficient to satisfy the final element of its claim for tortious interference with a contract, that it has suffered actual damage.

Having considered each of the elements, the Court concludes that Plaintiff's allegations are sufficient to establish the prerequisites for a claim of tortious interference with a contractual relationship. Accordingly, to the extent that Plaintiff is asserting a claim for tortious interference with a contractual relationship, Defendants' Motion to Dismiss that claim will also be denied.

E.   Plaintiff's Unfair and Deceptive Trade Practices Claim

Plaintiff also asserts a claim under North Carolina's Unfair and Deceptive Trade Practices Act, ("UDTPA"), N.C. Gen. Stat. § 75-1.1. To prevail on such a claim, a plaintiff must prove that: (1) the defendant committed unfair or deceptive acts, (2) the defendants'

19

action was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff.  Eli Research, Inc., 312 F. Supp. 2d at 757; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001);

Defendants do not dispute that Plaintiff has sufficiently pled the three essential elements of a claim under UDTPA; rather, Defendants contend that they are exempt from the statute by the "learned profession" exception.  N.C. Gen. Stat. § 75-1.1(b) broadly defines commerce as "business activity, however denominated."  Id.; Dalton, 353 N.C. at 656-57, 548 S.E.2d at 711.  However, "[p]rofessional services rendered by a member of a learned profession" are specifically excluded by N.C. Gen. Stat. § 75-1.1(b).  While the statutes do not define the term "learned profession," North Carolina courts have said that "[a] [l]earned profession is characterized by the need of unusual learning, the existence of confidential relations, the adherence to a standard of ethics higher than that of the market place, and in a profession like that of medicine by intimate and delicate personal ministration."  Cameron v. New Hanover Mem. Hosp., Inc., 58 N.C. App. 414, 445, 293 S.E.2d 901, 920 (1982) (quoting Commonwealth v. Brown, 302 Mass. 523, 527, 20 N.E.2d 478, 481 (1939)).  Further, the North Carolina Courts have consistently found that members of the medical and legal professions are members of a "learned profession."  See Philips v. Triangle Women's Health Clinic, 155 N.C. App. 372, 378-79, 573 S.E. 600, 604-05 (2002); Boyce & Isley v. Cooper, 152 N.C. App. 25, 36, 568 S.E.2d 893, 902 (2002); Reid v. Ayers, 128 N.C. App. 261, 266, 531 S.E.2d 231, 236 (2000).  Defendants cite no authority to support their contention that adoption service professionals are akin to medical and legal

20

professionals. Moreover, this Court has not adopted a position with regard to whether an adoption service professional meets the "learned profession" exception. Consequently, the Court finds that a determination of whether Defendants meet this "learned profession" exception would require the Court to make findings of fact which are not appropriate at the motion to dismiss stage and should be determined at either the summary judgment stage or at trial. Therefore, Defendants' Motion to Dismiss Plaintiff's claim under the UDTPA will also be denied.

      F. Plaintiff's Request for Attorney's Fees

In Count VI of the Amended Complaint, Plaintiff requests recovery of attorney's fees alleging that the Defendants have acted in bad faith, that they have been "stubbornly litigious," and that they have caused Plaintiff unnecessary trouble and expense. As a general rule, attorney's fees are not recoverable as an item of damages unless expressly authorized by statute. Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980). N.C. Gen. Stat. § 1D-45 permits an award of attorney's fees "against a defendant who asserts a defense in a punitive damages claim that the defendant knows or should have known to be frivolous or malicious." N.C. Gen. Stat § 1D-45 (2001) Because an award of attorney's fees requires findings of fact, any final determination regarding Plaintiff's recovery of attorney's fees will be addressed by the Court's final judgment at the conclusion of this litigation. Therefore, Defendants' Motion to Dismiss Plaintiff's claim for attorney's fees is denied at this time.

21

G.   Plaintiff's Request for Punitive Damages

Finally, Plaintiff requests punitive damages against Defendants.   Pursuant to N.C. Gen. Stat. §1D-15(a), "punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that fraud, malice or willful wanton conduct was present and was related to the injury for which compensatory damages were awarded."   Id.   Defendants have moved to dismiss Plaintiff's claim for punitive damages arguing that Plaintiff has failed to sufficiently allege any of its underlying tort claims, and thus Plaintiff has no basis to state a claim for punitive damages.   The Court has previously determined that Plaintiff has sufficiently stated claims of defamation and tortuous interference with a contractual relationship.   Further, Plaintiff has alleged that Defendants engaged in conduct which demonstrated ill will or malice toward Plaintiff.   For these reasons, the Court will not dismiss Plaintiff's claim for punitive damages.   Accordingly, Defendants' Motion to Dismiss Plaintiff's request for punitive damages will also be denied.

IV.   CONCLUSION

Because Plaintiff has filed an Amended Complaint, Defendants' Motion to Dismiss Plaintiff's Original Complaint [Doc. #15] will be DENIED as moot.   More appropriately before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. #24].   With respect to Defendants' Motion to Dismiss Plaintiff's Amended Complaint, the Court finds that Plaintiff has established a prima facie case for its claims of breach of contract, defamation, civil conspiracy, tortious interference with a contract, and unfair and deceptive trade practices, and has sufficiently stated a claim for attorney's fees and punitive

damages. Therefore, Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. #24] pursuant to Rule 12(b)(6) for failure to state claim upon which relief may be granted will also be DENIED.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 25th day of August, 2008.

United States District Judge